Kenneth S. Roosa
Cooke, Roosa, & Valcarce
3700 Jewel Lake Road
Anchorage, Alaska  99502
Phone:  (907) 276-2744
Fax:  (907) 276-2746
Attorneys for Plaintiff
Email:  Ken@Bushlawyers.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| AGGIE WASKEY and WASSILIE WASKEY, )<br>Individually and as Parents of )<br>RONALD WASKEY, a Minor, )<br> )<br>Plaintiffs, )<br>vs. )<br> )<br>UNITED STATES OF AMERICA, )<br> )<br>Defendant. )<br>————————————————————) | Case No. 3:04-cv-0110-JWS<br><br>Motion for Rule of Law on<br>Applicable Measure of Damages |

Plaintiff, through undersigned counsel, hereby moves the Court for a determination of the appropriate measure of damages in this case.  Normally such issues would not need to be addressed at this juncture, because the law of damages is relatively well settled and any award of damages requires a determination by the finder of fact as to disputed issues. In this case, the government has advanced a novel argument concerning the appropriate *measure* of damages, and resolution of the issue is essential if the case has any possibility of being resolved prior to the scheduled trial, which is set for April 9, 2007.   The Government has taken the position that Ron Waskey's future medical damages should be

measured by the amount that Medicare might in the future reimburse his health care providers, rather than the actual value of the services rendered. Plaintiff asks that this Court issue an order determining that future medical costs will be measured by the estimated actual cost of any such future expenses. Resolution of this issue involves issues of law appropriate for determination by the Court prior to trial.

## Facts

The essential facts of the case are not disputed. In summary, Ron Waskey, an Alaska Native boy of Athabascan and Yupik descent, developed an extremely serious kidney disease (MPGN) when he was about 9 years old in 1998. Despite numerous indicators that he had a potentially serious problem, and a detailed physician's order for a comprehensive medical workup, the disease went undiagnosed and untreated until 2003 when he reached the age of 14. At that time the MPGN was diagnosed by a pediatric nephrologist in Anchorage, Dr. Jeremy Gitomer, and Ron was placed on aggressive therapy. The therapy has been very successful, and the MPGN is currently under control. In the time between his developing symptoms of the disease at age 9, through the treatment received to date, at age 17, he suffered irreversible damage to the filtration cells in his kidneys. The exact degree of damage to his filtration cells, as well as the consequences of that damage, is disputed by the various retained experts, but there is agreement that Ron's kidney cells were damaged, and that he should have received treatment much earlier than it was actually initiated.

Among the possible consequences of the delayed treatment of Ron's MPGN is

future kidney failure, known as end stage renal disease (ESRD).  ESRD is treated by kidney transplant (the preferred treatment)  and/or a process known as hemodialysis, in which the patient's blood is dialyzed, or cleansed, of toxins so that life can be sustained. The National Kidney Foundation (http://www.kidney.org/atoz/atozItem.cfm?id=114) indicates that the average wait time in 1999 for a donor transplant was more than 3 years. During the wait for a kidney transplant, a person has no choice but to undergo hemodialysis in order to sustain life until a transplant becomes available.  Hemodialysis in Alaska is enormously expensive – the best efforts of experts retained by the parties has resulted in a determination that hemodialysis costs in the neighborhood of $30,000 per month.  In addition, hemodialysis also requires procedures to be conducted on a patient's veins to allow them to withstand the stress of thrice weekly dialysis.  Such procedures are not always successful and frequently have to be repeated.  Needless to say, they are also expensive, costing up to $7,500 each.

Many patients with ESRD are covered by Medicare.  Medicare pays the treating physician approximately 15% of the actual cost of transplant and hemodialysis, as well as supportive therapies and medications.  The Medicaid eligible patient is relieved from any obligation to pay for that portion of the care billed to but not paid by Medicare.  Physicians and health care facilities must make up their losses elsewhere.  Ron Waskey is currently Medicare eligible[1] because his parents have worked the requisite number of quarters, and

---

1  Ron Waskey is also a Medicaid recipient due to his family's financial circumstances. Medicaid has paid for all of his medical care to date.  Because the care he has received so far is the same care that he would have received had he been diagnosed with MPGN in 1998 and treated immediately, it is not treatment related to any act of medical negligence.

because he is a minor.  After he reaches adulthood, his eligibility will cease, but can be re-established if he works the requisite number of quarters in which he receives "substantial" earnings.  Ron is projected by Dr. Sharon Andreoli, the plaintiff's pediatric nephrologist, to sustain renal failure and therefore require hemodialysis and/or transplant between the ages of 27 and 32.  If she is correct, he will then be eligible for Medicare benefits only if he has personally qualified for them.  Unfortunately, Ron may not be able to qualify for Medicare in the future, as he has been diagnosed as borderline mentally retarded, is not doing well in school, and has had no access to vocational training up to this point in his life.  In short, there is no guarantee that Ron Waskey will be eligible for Medicare when he needs it most in his life.  Further, there is no assurance that Medicare, Medicaid or any other collateral source of medical benefits will actually exist when Ron Waskey will need such benefits, of if such programs do exist, what benefits they will provide

## Measure And Availability Of Damages

Under the FTCA, the law of the state in which the accident or injury occurred is the substantive law applicable to the claim, including the law of damages.  **28 U.S.C. §1346**.  Because the negligent medical care occurred in Alaska, the law of Alaska is applied to determine Ron Waskey's damages.  In Alaska, an injured person is entitled recover the present value of his reasonably expected future medical expenses.  As the Alaska Supreme Court held in *Blumenstein v. Baptiste*, 869 P.2d 470, 473 (Alaska 1994), "To recover for future medical expenses one must prove to a reasonable probability that they

Therefore no claim is being made for his past medical care.  Medicaid has agreed with this analysis of his past care related to his kidney disease, and has agreed that it will not assert a lien for past medical treatment.

will occur." *Maddocks v. Bennett, 456 P.2d 453, 458 (Alaska 1969).* "The jury cannot be allowed to speculate or guess in making allowance for future medical expenses; there must be some data furnished the jury upon which it might reasonably estimate the amount to be allowed for this item." *Henderson v. Breesman*, 77 Ariz. 256, 269 P.2d 1059, 1061-62 (Ariz. 1954), quoted in *Nesbett*, 432 P.2d at 618 n.31. More recently the Court held, in *Sherbahn v. Kerkove*, 987 P.2d 195, 199 (Alaska 1998) "To establish a claim for future medical expenses, a plaintiff must prove two elements. First, the plaintiff must prove the fact of damages by a preponderance of the evidence. To recover for future medical expenses one must prove to a reasonable probability that they will occur. Second, the plaintiff must prove the amount of damages with a degree of certainty that allows the finder of fact to reasonably estimate the amount to be allowed for the item of damages. Both the fact and the amount of damages can be proved by evidence of the type of treatment, the costs of treatment, the nature and duration of any hospitalization, resulting pain and suffering, and the length of any period of disability flowing from medical procedures."

Consequently, under Alaska law, after proving to a reasonable probability that future medical expenses will occur, Ron Waskey is entitled to recover his future medical costs based on information from which the finder of fact can reasonably estimate the amount of such damage. Significantly, the Court held measure of the recovery is the *cost* of treatment. There was no mention of the Medicaid reimbursement to the physician.

## The Collateral Source Rule Applies In This Case

The United States seems to assume that it is entitled to the benefit of any cost reduction for medical care that *may* in the future accrue to Mr. Waskey.  In fact, this is not the case.  If Mr. Waskey ever does become eligible for Medicare, and if the program is still in existence and provides coverage for his medical needs, it will be because he worked and contributed to the Medicare system through his payroll deductions.  In *Titchnell v. United States*, 681 F.2d 165 (3d Cir. 1982), the Third Circuit summarized the rationale that benefits paid out of a "special fund" need not be deducted. The government was held liable under the FTCA for negligent administration of a swine flu inoculation. The evidence established that plaintiff contributed to Medicare, resulting in the court's conclusion that such payments are from a collateral source under Pennsylvania law. *Id.* at 174. *See also Smith v. United States*, 587 F.2d 1013 (3d Cir. 1978) (Social Security Survivor benefits paid a widow and children not deducted from widow's damage award from government under FTCA); *United States v. Price*, 288 F.2d 448 (4th Cir. 1961) (Civil Service Retirement benefits not deductible); and *United States v. Brooks,* 176 F.2d 482 (4th Cir. 1949) (National Service Life Insurance Policy benefits not deductible from FTCA damage award).

The collateral source rule prevents a tortfeasor from benefiting from care to the injured victim that was provided gratuitously or that was paid for by a source entirely independent of the tortfeasor.  As discussed below, applying this rule, the court should determine, first, that Ron Waskey's damages include the full reasonable value of the care he will require in the future regardless of whether the amount might be paid for by

Medicaid or "written off" by agreement between Medicaid and the health care providers.

The collateral source rule has been followed in Alaska since at least 1963. In a 1963 opinion, the Alaska Supreme Court stated: "[A] tortfeasor is not entitled to have his liability reduced merely because plaintiff was lucky enough to have received compensation for his injuries or expenses from a collateral source."[2]

The RESTATEMENT (SECOND) OF TORTS § 920A (1979) provides probably the most widely-cited analysis of the collateral source rule, and the Alaska Supreme Court has cited and followed this analysis.[3] RESTATEMENT § 920A(b) provides:

> Payments made to or benefits conferred on the injured party from other sources are <u>not</u> credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable. (Emphasis added.)

Comment b to this section explains the application of the rule:

> Payments made or benefits conferred by other sources [i.e., sources not directly connected to the defendant] are known as collateral-source benefits. They do not have the effect of reducing the recovery against the defendant. The injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff's injury. But it is the position of the law that

---

[2]    *Ridgeway v. North Star Terminal & Stevedoring Co.,* 378 P.2d 647, 650 (Alaska 1963).

[3]    *See Chenega Corp. v. Exxon Corp.,* 991 P.2d 769, 790 nn. 77, 78, 82 (Alaska 1999); *Luth v. Rogers & Babler Construction Co.,* 507 P.2d 761, 767 n.22 (Alaska 1973) (noting that the collateral source rule "is rooted in" the previous, substantively similar version of the RESTATEMENT OF TORTS). *See also Loncar v. Gray,* 28 P.3d 928, 933 & n.19 (Alaska 2001) (reiterating that Alaska follows the common law collateral source rule). The common law rule has been abrogated to a limited extent by AS 09.17.070, but only with respect to unsubrogated payments from certain collateral sources. This statute unquestionably has no application when there was no payment. The statute is discussed further in Section II, *infra,* at 12-13.

> a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. If the plaintiff himself was responsible for the benefit, as by maintaining his own insurance . . . , the law allows him to keep it for himself. If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers. The law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him.

Comment c to RESTATEMENT § 920A lists some of the categories of collateral benefits covered by this rule. Comment (c)(3) explains that this category includes both cash gratuities and the rendering of services: "Thus the fact that the doctor did not charge for his services or the plaintiff was treated in a veterans hospital does not prevent his recovery for the reasonable value of the services." The Alaska Supreme Court in *Luth v. Rogers & Babler Construction Co.,* quoted with approval from the prior version of this comment, which stated that an injured plaintiff is entitled to recover the "reasonable value of medical treatment or other services made necessary by the injury <u>although these have been donated to him</u>."[4]

As is stated above, the collateral source rule in most jurisdictions, including Alaska, is heavily influenced by the RESTATEMENT (SECOND) OF TORTS § 920A (1979). Along with specifically listing gratuitous services as covered by the collateral source doctrine, the RESTATEMENT specifically lists "[s]ocial legislation benefits," stating that "[s]ocial security benefits, welfare payments, pensions under special retirement acts, all are subject to the collateral-source rule."[5] The RESTATEMENT does not distinguish between

---

[4]      507 P.2d 761, 767 n.22 (Alaska 1973) (quoting RESTATEMENT OF TORTS § 920(e) (1939) (emphasis added)).

[5]      RESTATEMENT (SECOND) OF TORTS § 920A, cmt. (c)(4).

amounts paid to the provider by the government program (such as Medicare or Medicaid) and any amounts written-off, presumably because written-off services are essentially gratuitous services, and the preceding comment in the RESTATEMENT explains that gratuitously provided health care services are covered by the collateral source rule.[6]  An earlier comment also notes that the collateral source rule applies regardless of whether the payer has a subrogation right to be repaid by the plaintiff.[7]

Many courts in recent years have analyzed the question of how to treat written-off amounts, as the gap has grown between the amount that health care providers initially bill and what they agree to accept from private insurers or government programs that negotiate discounts in exchange for guaranteed payments.  The overwhelming majority of jurisdictions that have addressed this question follow the RESTATEMENT and hold that health care services that are covered by written-off payments are analogous to gratuitously provided health care services.[8]  These courts treat the written-off charges as

---

6    *Id.* cmt. (c)(3).

7    *Id.* cmt. (c)(1) ("[T]he rule applies to insurance not involving subrogation, such as life or health policies.").

8    *See Lopez v. Safeway Stores, Inc.,* 129 P.3d 487, 491-97 (Ariz. App. 2006); *Mitchell v. Haldar,* 883 A.2d 32, 37-40 (Del. 2005); *Olariu v. Marrero,* 549 S.E.2d 121, 122-23 (Ga. App. 2001); *Bynum v. Magno,* 101 P.3d 1149, 1150-59 (Haw. 2004); *Arthur v. Catour,* 803 N.E.2d 647, 648-50 (Ill. App. 2004); *Baptist Healthcare Systems, Inc. v. Miller,* 177 S.W.3d 676, 682-84 (Ky. 2005); *Wal-Mart Stores, Inc. v. Frierson,* 818 So. 2d 1135, 1139-40 (Miss. 2002); *Brown v. Van Noy,* 879 S.W.2d 667, 676 (Mo. App. 1994); *Williamson v. Odyssey House, Inc.,* 2000 WL 1745101, at 1 (D.N.H.); *Robinson v. Bates,* 828 N.E.2d 657, 663-68 (Ohio App. 2005); *Covington v. George,* 597 S.E.2d 142, 143-44 (S.C. 2004); *Lindholm v. Hassan,* 394 F. Supp. 2d 1104, 1107-11 (S.D. 2005); *Wong v. Graham,* 2001 WL 123932, at 11 (Tex. App.) (not designated for publication); *Acuar v. Letourneau,* 531 S.E.2d 316, 322 (Va. 2000); *Ellsworth v. Schelbrock,* 611 N.W.2d 764, 766-71 (Wis. 2000); *see also Hardi v. Mezzanotte,* 818 A.2d 974, 983-84 (D.C. App. 2003) (concluding that defendant must pay amounts written off because of

classic collateral source benefits to the injured victim, and hold that the tortfeasor must pay the full reasonable value of the medical care provided, and legally may not benefit from the discounts that the health care providers allowed to the third-party payer.

The Wisconsin court's decision in *Ellsworth v. Schelbrock* is typical. In that case, the plaintiff, who was very seriously injured in a car accident, qualified for benefits under a state Medical Assistance program, which provides a form of health insurance to needy individuals. The defendant moved to limit the plaintiff's proof and recovery to the amount that the Medical Assistance program actually paid for plaintiff's care, which was significantly less than the health care providers initially billed.[9] The trial court denied the motion, and the state supreme court affirmed that ruling. The court explained that the well-established collateral source rule provides that a tortfeasor's liability is not reduced because the plaintiff had the foresight to arrange for insurance or the good luck to receive benefits from another kind of collateral source. Simply stated, the tortfeasor must pay for all the harm he caused.[10] The court rejected the argument that the amount paid by the Medical Assistance program defines the "reasonable value" of the plaintiff's medical

contract with private insurer, under a benefits-of-the-bargain theory); *Barday v. Donnelly,* 2006 WL 381876, at 3 (Me. Super. 2005) (rejecting argument that amount paid by government health programs defines the "reasonable value" of care provided and allowing plaintiff to introduce the full amount billed); *Chapman v. Mazda Motor of America, Inc.,* 7 F. Supp. 2d 1123, 1124-25 (D. Mont. 1998) (denying defendant's pretrial motion to preclude admission of the total medical bills, without ruling on whether plaintiff could collect the written-off amounts).

9      611 P.2d at 766.

10     *Id.* at 768.

care, saying that the tortfeasor is not entitled to benefit from the victim's eligibility for government services, or the fact that the government has clout to negotiate lower rates.[11]

The Hawaii court's decision in *Bynum v. Magno* is similar. It makes the point that the RESTATEMENT provisions on the collateral source rule specifically apply both to government programs and to gratuities. If a doctor does not charge at all, the plaintiff still recovers the full, reasonable value of the doctor's services. Likewise, the court reasoned, the plaintiff should recover the full reasonable value if she receives care at a partially discounted rate.[12] The Kentucky court called it "absurd" to suggest that a tortfeasor should benefit from a contractual arrangement between the plaintiff's doctors and a government program.[13] That court observed that the deterrent effect of tort liability would be reduced if the defendant is not required to bear full responsibility for the damages he caused.[14]

The Alaska Supreme Court has not yet dealt directly with the question of whether an injured plaintiff's damages include the full amount billed by health care providers. Two Justices, dissenting from the denial of a petition for review, expressed their view that written-off payments should be treated as collateral source benefits, and that the injured person therefore may claim the original total as his or her cost of medical care.[15] These Justices signaled their agreement with the cases from other jurisdictions that have

---

11    *Id.* at 769.
12    101 P.3d at 1155-57.
13    *Baptist Healthcare Systems,* 177 S.W.3d at 683.
14    *Id.* at 683-84.
15    *Lucier v. Steiner Corp.,* 93 P.3d 1052, 1053-54 (Alaska 2004) (Fabe and Carpeneti, JJ., dissenting).

held that written-off payments are collateral benefits, and therefore plaintiff may collect from defendant the total reasonable value of the medical care (not just the amount paid and not written off).[16]  These Justices explained their view, in part, as follows:

> There is no reason to distinguish between cases where the provider writes off part of the care's value out of charity, because it has no hope of collecting, and cases where the payment is coming from an insurer -- governmental or private -- with bargaining power.  The amount discounted out of a medical bill is part of the value of that collateral benefit and should not accrue to the defendant.  Otherwise a plaintiff whose insurer has the leverage to negotiate large reductions in bills is placed in a worse position than a plaintiff whose medical care is provided for free by a charitable doctor.[17]

The silence of the remaining three Justices has no substantive significance.[18]  Mr. Waskey believes that, when the Court confronts this issue, it will side with the clear majority of cases from around the country.

The Alaska legislature has abrogated the common law collateral source rule to an extent, but the statute's terms do not apply in the current case.  AS 09.17.070 applies only in circumstances where the collateral source does not have a right of subrogation by law or contract.

Second, the statute's provisions do not apply either to the amount paid by Medicaid or the amount written off.  Section (a) of AS 09.17.070 expressly states that it

---

16    *Id.* at 1053 & nn. 6-7 (citing with approval *Olariu v. Marrero,* 549 S.E.2d 121, 123 (Ga. 2001); *Acuar v. Letourneau,* 531 S.E.2d 316, 322 (Va. 2000); *Ellsworth v. Schelbrook,* 611 N.W.2d 764, 768-69 (Wis. 2000)).

17    93 P.3d at 1053-54 (Fabe & Carpeneti, JJ., dissenting).

18    A footnote to the Order of the Court, dismissing the petition for review as improvidently granted, states: "A denial of a petition for review of an interlocutory order does not mean that we either approve or disapprove of the order sought to be reviewed, but merely that we decline to pass judgment at all on the action of the trial court."  93 P.3d at 1052 n.1.

does not apply to collateral sources with a right of subrogation[19]; Medicaid and Medicare as a matter of law have a right of subrogation. Section (d) expressly states that the statute does not apply to gratuitous benefits provided to the claimant.[20]  As discussed above, the amount that the doctors, hospitals and others bill but wrote off is a type of gratuitous benefit, much as if the health care providers had provided their services entirely without charge.

AS 09.55.548, governing awards in medical malpractice cases, clearly establishes that the collateral source doctrine applies to medical malpractice cases involving Medicaid or Medicare:

> **(b)** Except when the collateral source is a federal program that by law must seek subrogation and except death benefits paid under life insurance, a claimant may only recover damages from the defendant that exceed amounts received by the claimant as compensation for the injuries from collateral sources, whether private, group, or governmental, and whether contributory or noncontributory. Evidence of collateral sources, other than a federal program that must by law seek subrogation and the death benefit paid under life insurance, is admissible after the fact finder has rendered an award….

In short, the court should receive in evidence the total costs that will be billed by Mr. Waskey's health care providers. The court should not admit or consider the amounts that might be written off if the bills are eventually paid in part by Medicaid. The written-

---

19    AS 09.17.090(a) states: "After the fact finder has rendered an award to a claimant, and after the court has awarded costs and attorney fees, a defendant may introduce evidence of amounts received or to be received by the claimant as compensation for the same injury from collateral sources that <u>do not have a right of subrogation</u> by law or contract." (Emphasis added.)

20    AS 09.17.090(d)(3) states: "Notwithstanding (a) of this section, the defendant may not introduce evidence of gratuitous benefits provided to the claimant."

off amounts are collateral benefits.  The tortfeasors (and any insurer) may not benefit by these collateral sources, and may not reduce the amounts they are obligated to pay because the health care providers agreed to settle the bills by accepting less than their standard charges.

## Any Future Medicaid Benefits Are Speculative

Although the United States argues that the damages awarded to Ron Waskey should be measured by the Medicare reimbursement amount, it ignores one very important issue.  Ron Waskey's eventual entitlement to Medicare is speculative and uncertain.  There is no guarantee that he will be eligible for Medicare, Medicaid, or any other medical assistance program 15 years hence when he is likely to need hemodialysis and/or kidney transplant services.  Indeed, there is no guarantee that Medicare, Medicaid or any other medical assistance program will be available in the future, or if they do exist, what benefits might be provided.  What is known is that Ron Waskey did not receive the medical services he needed as a child, and that he was injured as a result thereof.  The proper measure of his future medical expenses is their cost, not some illusory and speculative benefit which he may never receive and which may not exist in the future.  If the United States is to benefit from Ron Waskey's potential future participation in the Medicare system, it must bear the burden of proving any Medicare benefits that Ron Waskey will receive or be entitled to receive in the future.  Silverson v. United States, 710 F.2d 557,560 (9th Cir. 1983).  This burden it cannot meet by any reasonable standard of proof.

## CONCLUSION

The court should determine that future Medicaid benefits to Ron Waskey are speculative, and in any event are collateral benefits which may not be considered in awarding damages against the United States.  Further, the Court should rule that Ron Waskey is legally entitled to recover from the tortfeasor the reasonable value of medically necessary services, including the actual fair market cost of hemodialysis, organ transplant, and other related services and medications.  The amount actually reimbursed by Medicare should be found to be irrelevant as a matter of law.

DATED at Anchorage, Alaska, this 24th day of October, 2006.


**COOKE, ROOSA, & VALCARCE, LLC**
Attorneys for Plaintiff Aggie Waskey


By:      /s/Kenneth S. Roosa
         Cooke, Roosa, & Valcarce
         3700 Jewel Lake Road
         Anchorage, Alaska  99502
         Phone:  (907) 276-2744
         Fax:  (907) 276-2746
         Attorneys for Plaintiff
         Email:  Ken@Bushlawyers.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2006, a copy
of the foregoing Motion for Rule of Law on Applicable
Measure of Damages was served electronically on:

Gary Guarino, Esq.
Assistant U.S. Attorney
222 W. 7th Ave., #9, Room 253
Anchorage, AK  99513

Donna McCready, Esq.
Ashburn & Mason, PC
1130 W. 6th Ave., Suite 100
Anchorage, AK  99501


/s/ Kenneth Roosa