NELSON P. COHEN
United States Attorney

GARY M. GUARINO
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska  99513-7567
Telephone: (907) 271-5071
Facsimile: (907) 271-2344
gary.guarino@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| AGGIE WASKEY and WASSILIE WASKEY, Individually and as Parents of RONALD WASKEY, a Minor,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>UNITED STATES OF AMERICA<br><br>　　　　　Defendant(s). | Case No. 3:04-cv-00110-JWS<br><br>**UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR RULE OF LAW ON APPLICABLE MEASURE OF DAMAGES** |

**INTRODUCTION**

　　Plaintiffs' Motion for Rule of Law seeks to apply the collateral source rule to define the measure of damages for Waskey's alleged future medical expenses for dialysis and kidney transplant medical services.  The United States opposes Plaintiffs' motion on the grounds that the common law collateral source rule has been abrogated for medical malpractice actions;[1] and that the medical costs that are paid by Medicare, the program that covers the overwhelming majority of  patients with

---

[1] AS 09.55.548(b); Reid v. Williams, 964 P.2d 453, 455 (Alaska 1998)

ESRD who need dialysis or kidney transplant services,[2] should be considered in estimating the reasonable costs or damages for Plaintiffs' alleged future medical expenses.

## FACTUAL SUMMARY

Ronald Waskey (age 17) has a kidney disease, Membranoproliferative Glomerulonephritis Type II (MPGN II), first diagnosed in July 2003. As Plaintiffs note, the past and ongoing medical care for Waskey's kidney disease is being paid for by the Medicaid program. Plaintiffs are not seeking damages for this medical care because Waskey would have received the same care if his disease had been diagnosed at an earlier date. Plaintiffs' Motion for Rule of Law pp. 3-4, n. 1.

The long-term statistical prognosis for MPGN II patients is not favorable. Waskey's treating nephrologist, Dr. Jeremy Gitomer, cited medical studies indicating that 50 percent of MPGN patients develop End Stage Renal Disease (ESRD) or renal failure within 10 years, and up to 80 percent of MPGN II patients have renal failure within 20 years.[3] Dr. Gitomer testified that Waskey's disease has responded well to ongoing treatment and that he is "essentially in remission" at this time.[4]

Plaintiffs' primary claim is that the delay in diagnosis of Waskey's disease will cause him to develop ESRD and to need dialysis and a kidney transplant, approximately 10 to 15 years in the future, at age 27 to 32. Based on this scenario, Plaintiffs seek to recover damages for the estimated future medical expenses that Waskey would incur if and when he develops ESRD.[5] Dr. Gitomer has

---

[2] 42 U.S.C. §1395c(3); June 2004 U.S. General Accounting Office Report, excepted pages attached in Exhibit B.

[3] Dr. Gitomer Deposition pp. 22-25, Exhibit D.

[4] Dr. Gitomer Deposition pp. 93-94, Exhibit D.

[5] Docket 32, Plaintiffs' Motion for Rule of Law pp. 2-4.

testified that given Waskey's favorable response to treatment, he is unlikely to need dialysis or a kidney transplant in the next 10 to 20 years.[6] The United States' medical expert, Dr. Anthony Portale, testified that Waskey is unlikely to experience ESRD over the next 15 years. Dr. Portale also noted that medical studies indicate that up to 90 percent of MPGN II patients develop renal failure within approximately 20 years.[7] Thus, the United States disputes whether Waskey will experience ESRD in the next 10 to 15 years and whether any long-term renal failure would be attributable to a delay in diagnosis as opposed to the normal statistical prognosis for the disease.

In 1965 Congress established the Medicare program to provide medical care for the aged. 42 U.S.C. § 1395. Medicare has been expanded to provide medical care for patients with ESRD and renal failure. 42 U.S.C. § 1395(c)(3). Under Medicare's "prospective payment system," it establishes pre-set payment schedules for various medical services based on the assessed cost of the services. Medicare informs the participating medical care providers, in advance, what they will be paid for the specified medical services. The medical providers who choose to participate in the Medicare program agree to accept the Medicare approved rate as payment for their services. These providers are not permitted to recover additional or higher charges from the Medicare patient.[8]

As Plaintiffs note, many ESRD patients are covered by Medicare for their medical care.[9]

---

[6] Dr. Gitomer Deposition pp. 93-97, Exhibit D.

[7] Dr. Portale Deposition p. 102, Exhibit C.

[8] <u>Baptist Healthcare Systems v. Miller</u>, 177 S.W.3d at 685-86 (Cooper, Justice, dissenting) (providing a summary of the Medicare program and payment system).

[9] Up to 90 percent of ESRD patients, according to a June 2004 U.S. General Accounting Office Report, (www.gao.gov/cgi-bin/getrpt?GAO-04-050), excerpted pages attached in Exhibit B.

Waskey, as a dependent child, is entitled to Medicare and Medicaid benefits based on his family's income and his parents' Social Security work history. Under the Social Security eligibility rules for Medicare coverage for ESRD, Waskey will be eligible for Medicare, as a dependent child, until age 22. Between ages 22 and 26 he will continue to be eligible if he receives at least one-half of his support from his parents. After age 26, he would qualify based on his own work history.[10] Under Plaintiffs' future scenario, if Waskey were to develop ESRD at age 29 (between age 27 to 32), he would need to have earned seven Social Security "quarters" (one for each year after age 21 but not including age 29) to qualify for Medicare.[11] A Social Security "quarter" is currently equal to $970 in wages.[12] Thus, over the next 12 years Waskey would have to earn approximately $7,000 to be eligible for Medicare. If he were unable to earn even this minimal amount over the next decade, he would likely qualify for Medicaid benefits based on his own financial status and ESRD.[13]

## ARGUMENT

Plaintiffs' Motion for Rule of Law seeks to apply the collateral source rule to define the measure of damages for Waskey's projected future medical expenses for dialysis and kidney transplant medical services. Plaintiffs seek to preclude evidence regarding the medical costs that are established and paid by Medicare, the federal program that covers the overwhelming majority of

---

[10] Declaration of Robin Henderson, with attached handbook summary of the Social Security eligibility rules for Medicare coverage for ESRD, Exhibit 1, 2.

[11] Id., Exhibit 1 p. 6, Exhibit 2 p. 5.

[12] Exhibit A p. 2

[13] AS 47.07.010 et seq.

patients with ESRD who need dialysis or kidney transplants.[14] The United States opposes Plaintiffs' motion on the following grounds.

First, Alaska has rejected the collateral source rule for medical malpractice actions. Plaintiffs' claims and damages are governed by AS 09.55.548(b), which abrogates the collateral source bar in AS 09.17.070. Reid v. Williams, 964 P.2d 453, 455 (Alaska 1998). AS 09.55.548(b) was enacted as part of malpractice reform legislation, which was intended to reduce malpractice damages awards and to prevent the double payment of damages. Id., at 456-58; Dyet v. McKinley, 81 P3d 1236, 1239 (Idaho 2003) (applying Idaho law abrogating the collateral source bar). The Alaska Legislature rejected the common law collateral source rule that allows the plaintiff a double recovery if the alternative would be to benefit the defendant. Reid, 964 P.2d at 457-58 (the statute will reduce damages awards and shift tort costs away from defendants); see Chenega Corp. v. Exxon Corp., 991 P.2d 769, 790-91 (Alaska 1999) (stating the common law rule). This change in the law is consistent with the Alaska tort law principle that a plaintiff should recover no more than the loss actually incurred. Luth v. Rogers & Babler Construction Co., 507 P.2d 761, 766 (Alaska 1973). Under AS 09.55.548(b), Plaintiffs may recover damages for payments or compensation from a collateral source only where the source is a federal program and the source is entitled to seek subrogation from the Plaintiffs for the payments or compensation.

Second, the United States does not seek to reduce Plaintiffs' damages claims by the amount of the medical expenses paid by Medicare. To the contrary, the United States asserts that the medical costs established and paid by Medicare, which covers most ESRD patients, are evidence of the costs

---

[14] 42 U.S.C. §1395c(3); June 2004 U.S. General Accounting Office Report, excepted pages attached in Exhibit B.

likely to be incurred in the future, if Waskey has ESRD and needs dialysis or a kidney transplant. Future medical expenses are recoverable if they are found to be reasonably likely to occur and if there is information upon which to reasonably estimate the future expenses. Blumenshine v. Baptiste, 869 P.2d 470, 473 (Alaska 1994). The Medicare costs should be considered in estimating the reasonable measure of damages for Plaintiffs' alleged future medical expenses for dialysis and kidney transplant services. However, given Alaska's abrogation of the collateral source rule, Plaintiffs should not be entitled to recover damages for any discounted or "illusory" medical costs that would not be paid by Medicare or incurred by Waskey, either directly or via subrogation claim. Dyet, 81 P.3d at 1239; Moorhead v Crozer Chester Medical Center, 765 A.2d 786, 791 (Pa. 2001); Goble v. Frohman, 901 So.2d 830, 833 (Fla. 2005) (per curiam). As Plaintiffs acknowledge, medical providers are not permitted to recover additional charges from Medicare patients beyond the Medicare rates and payments . Plaintiffs' Motion for Rule of Law p. 3.

Third, Medicare is a long-established federal program intended to provide medical care for the aged and for persons who experience ESRD. 42 U.S.C. § 1395c. See, Baptist Healthcare Systems v. Miller, 177 S.W.2d 676, 685-86 (Cooper, Justice dissenting) (description of Medicare and its mandatory "prospective payment system" for medical services). Medicare covers approximately 90 percent of all individuals with ESRD, based on the Social Security eligibility rules set out above.[15] Given the scope and extent of Medicare coverage, the Medicare rates and costs represent the "actual costs" of dialysis and kidney transplant for the large majority of ESRD patients. Using Medicare costs to estimate the reasonable value of the future medical expenses for Waskey's

---

[15] Exhibit B, Robin Henderson Declaration, Exhibits 1, 2.

claims for future ESRD and medical care is neither speculative nor unreasonable. Plaintiffs argue that Medicare program and benefits are too speculative to be used in estimating Plaintiffs' alleged future medical expenses. To some extent, Plaintiffs' entire future damages claim is speculative since it is based on assumptions and predictions as to Waskey's medical condition and medical treatment, 10 to 15 years or more in the future. There certainly is no guarantee that Plaintiff will experience ESRD or that he will need dialysis or a kidney transplant 10 to 15 years from now. However, if the Plaintiffs are entitled to recover damages for these alleged future medical conditions and expenses then it is no more speculative to look to the Medicare costs as a reasonable means to estimate these future medical expenses.

<u>Fourth</u>, Plaintiffs' motion relies on the collateral source rule in AS 09.17.070 and the Restatement (2d) of Torts § 920A (1979).[16] However, AS 09.17.070(e) provides that it does not apply to medical malpractice actions. The Restatement notes that the common law collateral source rules can be changed by statute. Restatement (2d) of Torts § 920A, comment d. AS 09.55.548(b) has changed the common law collateral source rule. The legal authority and court decisions cited in Plaintiffs' motion are not controlling or applicable because they apply the traditional collateral source rule. <u>See</u> <u>Lucier v. Steiner Corp.</u>, 93 P.3d 1052, 1053 (Alaska 2004) (Fabe, J., dissenting) (applying the common law collateral source rule in a non-malpractice action). The central rationale of these cases, that a defendant should not receive the benefit of collateral sources or gratuitous benefits, was rejected by the Alaska Legislature when it enacted AS 09.55.548(b). <u>Reid</u>, 964 P.2d at 456-58 (the legislature sought to reduce malpractice damages even if this would benefit/shift costs

---

[16] Docket 32, Plaintiffs' Motion for Rule of Law pp. 5-13.

from tort defendants). It is the dissents in some of the cases cited by Plaintiffs that more closely articulate the proper application of the collateral source rule under the Alaska law for malpractice actions.[17] To the extent that Waskey may receive benefits in the form of reduced or discounted (and unsubrogated) expenses via Medicare, these unpaid or discounted costs should not be included in any damages award. AS 09.55.548(b).

Further, it makes less sense to apply the collateral source rule where the defendant is the United States and the source is Medicare, a government "social benefits" program. Arthur v. Catour, 805 N.E.2d 647, 652 (Ill. App. 2004). To include as damages the discounted costs that would not be paid by Medicare or be recovered against the plaintiff, would result in a windfall to the plaintiff at the expense of the government and taxpayers. Bynum, 101 P.3d at 1167 (Moon, C.J. dissenting). To the extent that the common law collateral source rule for damages includes an "element of punishment" of the tort defendant, that policy should not be applied to the United States. Restatement (2d) of Torts § 920A, comment b; 28 U.S.C. § 2674 (punitive damages are not recoverable against the United States). Finally, since this is an FTCA action tried by the Court, the evidentiary concerns that collateral sources will lead to jury confusion or prejudice are not applicable. Tolan v. ERA Helicopters, Inc., 699 P.2d 1265, 1267 (Alaska 1985).

## CONCLUSION

The United States respectfully requests that the Court deny Plaintiffs Motion for Rule of Law and rule that the medical costs established and paid by Medicare for ESRD patients can be considered in estimating the cost of the future medical expenses alleged by Plaintiffs. Given the

---

[17] Bynum v. Magno, 101 P.3d 1149, 1163-67 (Haw. 2004) (Moon, C,J. dissenting); Baptist Healthcare Systems v. Miller, 177 S.W.3d 676, 685-90 (Ky. 2005(Cooper, J., dissenting).

abrogation of the common law collateral source rule by AS 09.55.548(b), the Court should rule that the collateral source bar is not applicable to Plaintiffs' malpractice claims and that it does not permit Plaintiffs to exclude references to Medicare costs or to recover damages for the discounted expenses that would not be paid by Medicare or incurred by the Plaintiffs.

Respectfully submitted, on November 28, 2006.

NELSON P. COHEN
United States Attorney

s/Gary M. Guarino
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: gary.guarino@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 28, 2006
a copy of the foregoing UNITED STATES'
OPPOSITION TO PLAINTIFFS' MOTION
FOR RULE OF LAW ON APPLICABLE
MEASURE OF DAMAGES was served
electronically on Ken Roosa and
Donna McCready.

s/ Gary M. Guarino