Kenneth S. Roosa
Cooke, Roosa, & Valcarce
3700 Jewel Lake Road
Anchorage, Alaska  99502
Phone:  (907) 276-2744
Fax:  (907) 276-2746
Attorneys for Plaintiff
Email:  Ken@Bushlawyers.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| AGGIE WASKEY and WASSILIE WASKEY, )<br>Individually and as Parents of                         )<br>RONALD WASKEY, a Minor,                        ) | Case No. 3:04-cv-0110-JWS |
| )<br>Plaintiffs,         )<br>vs.                                                              ) | Errata to |
| )<br>UNITED STATES OF AMERICA,                        )<br>) | Reply to Opposition to Motion for<br>Rule of Law on Applicable<br>Measure of Damages |
| Defendant.       ) | |

In this damages only case[1], the United States Opposes the plaintiff's Motion for Rule of Law, arguing that: (1) the collateral source rule does not apply in the instant case, (2) Medicare costs are the actual costs of medical care, (3) Ron Waskey's future entitlement to Medicare is no more speculative than his future medical needs, and (4) policy arguments about what Waskey's recovery should be.  The United States' analysis is not only wrong, as will be demonstrated below, it also represents an effort to deny fair compensation to an innocent victim of undisputed and unjustifiable medical neglect.

---

1  The United States has filed a Qualified Non-Opposition to the plaintiffs Motion for Partial Summary Judgment on Liability and Causation.

### (1) Applicability of the Collateral Source Rule

The United States asserts that the collateral source rule has been abolished with respect to medical malpractice cases, and argues that Plaintiffs' attempt to exclude evidence of Medicare payments should be denied. The United States misunderstands the plaintiffs' argument and the Alaska collateral source statute. As was set forth in the underlying motion, AS 09.55.548, governing awards in medical malpractice cases, clearly establishes that the collateral source doctrine is still viable and applies to medical malpractice cases *involving Medicaid or Medicare,* both of which are federal programs that fall within the exception to AS 9.55.548:

> **(b)** *Except when the collateral source is a federal program that by law must seek subrogation* and except death benefits paid under life insurance, a claimant may only recover damages from the defendant that exceed amounts received by the claimant as compensation for the injuries from collateral sources, whether private, group, or governmental, and whether contributory or noncontributory. Evidence of collateral sources, *other than a federal program that must by law seek subrogation* and the death benefit paid under life insurance, is admissible after the fact finder has rendered an award….

Plaintiffs understand and agree that generally speaking, the collateral source rule has been abrogated in Alaska in medical malpractice cases. The intent of AS 09.55.548 is to prevent double recovery by victims of medical malpractice – once from a private carrier and again from the tortfeasor. Here however, there is an exception – *if* Waskey is ever entitled to Medicare benefits, evidence of such benefits is not admissible generally (and may be excludable for evidentiary reasons) because Medicare is a federal program that by law must seek subrogation, and under Ninth Circuit law Medicare is a collateral

source. *Silverson v. United States*, 710 F.2d 557, 560 (9th Cir. 1983).

If Waskey never qualifies for Medicare, he has no "collateral source" – his only source of funds to pay for his future medical care will be whatever compensation he recovers in this lawsuit. The case of *Reid v. Williams* 964 P.2d 453 is distinguishable from this case because, unlike Waskey, the plaintiff in *Reid* had private medical insurance. There was no issue as to whether he might have medical insurance in the future. The effect of AS 09.55.548, in a case like *Reid,* was to shift the burden of payment for the medical care from the malpractice defendant to the medical insurance carrier. The *Reid* court did not deny the plaintiff recovery – it found that he had already recovered for such losses and declined to allow him to be doubly compensated. Important to that decision was the fact that it dealt with *past* not future, medical expenses. In the instant case, *Waskey makes no claim for past medical expenses.*

If the United States' argument is accepted, Waskey will not face deprivation of a double recovery, rather, he will be denied *any recove*ry. Unless Waskey somehow manages to qualify for Medicare in the future, he will have received no recovery for the costs of renal transplant, dialysis, and associated care, a figure that will likely run into the hundreds of thousands of dollars.

**2. Medicare Reimbursement is Not the Actual Cost of the Medical Care**

In Alaska, an injured person is entitled to recover the present value of his reasonably expected future medical expenses. As discussed in the underlying motion,

> "The plaintiff must prove the amount of damages with a degree of certainty that allows the finder of fact to reasonably estimate the amount to be

allowed for the item of damages. Both the fact and the amount of damages can be proved by evidence of the type of treatment, the costs of treatment, the nature and duration of any hospitalization, resulting pain and suffering, and the length of any period of disability flowing from medical procedures."

*Sherbahn v. Kerkove*, 987 P.2d 195, 199 (Alaska 1998).

One major problem with the United States' argument is that there is no correlation between the costs of treatment in 10 years and what Medicare might be willing to pay for the cost of treating one of its beneficiaries today. Indeed, the United States completely ignores the reality that federal regulations are subject to constant amendment. Whatever computation the United States proposes today would be viable only so long as the federal government does not change its regulations. And when such changes did occur, Waskey would have no recourse, as his award would be final.

The United States' argument (Opposition at 7) that Plaintiffs' entire future damages claim is speculative because it attempts to predict future medical needs and costs, is specious at best and inappropriate in this procedural setting. In order to recover for future medical costs plaintiffs will have to bear their burden of proof, as described in *Sherbahn*, by a preponderance of the evidence. Whether or not Plaintiffs are successful can only be determined after the close of evidence at the trial. In this motion for a ruling on applicable law, disparaging comments on the strength of Plaintiffs' case are inapposite

Of interest is that no expert supports the United States' valuation methodology. Jill Friedman, retained as an expert by the Plaintiffs, is a very well known and experienced rehabilitation nurse who has worked as a certified life care planner in the Anchorage area

for many years used actual cost figures to calculate Ron Waskey's future medical costs. For example, with respect to dialysis, she determined that the *monthly* cost in Anchorage of hemodialysis is approximately $30,000. She did not consider Medicare reimbursement in determining the actual cost of Ron Waskey's health care, although she had some medicare information available to her. (Exhibit 1, Friedman Depo Excerpts).

Likewise, Carol Jacobsen, the life care planner retained by the United States, reluctantly admitted at her deposition that she has never before used Medicare reimbursement as a basis for computation of future medical expenses, and did not do so in this case. She did state that she was asked to do so by Mr. Guarino and was planning to supplement her report using that new and different methodology. (Exhibit 2, Jacobsen Depo Excerpts).

In sum, the United States, rather than stepping up and paying fair compensation to a child whose life has been irrevocably damaged by negligent and inexcusable medical care, is now proposing an unorthodox and completely unprecedented methodology as a means of slashing its liability for future medical costs by as much as 90%. Sadly, the United States refuses to acknowledge the stark fact that its proposed methodology would doubtless leave Ron Waskey with insufficient funds to pay for his medical needs at a time in the future when he requires expensive medical care in order to sustain life.

**3. Waskey's Future Eligibility for Medicaid Benefits Is Speculative**

Apart from asserting, without authority, that "Medicare rates and costs represent the 'actual costs' of dialysis and kidney transplant," (Opposition at page 6) the United

States cites no authority for the proposition that Medicare rates represent the present value of his reasonably expected future medical expenses. Instead, the opposition simply claims that 90% of all ESRD patients are covered by Medicare, Exhibit B, implying that as a matter of course Waskey will also receive Medicare benefits. Analysis of Exhibit B discloses the converse. Exhibit B is a GAO study which also states that at the time of its publication in 2004, there were over 406,000 ESRD patients in this country. If that information is still accurate, it means that 1 out of every 10 ESRD patients, or more than 40,600 Americans, are *not* covered by Medicare. The facts of this case strongly suggest that due to his particular circumstances, Ron Waskey is unlikely to ever qualify for Medicare. Ron Waskey will be among the many thousands who are denied the umbrella of Medicare coverage.

Conceding *arguendo* that the United States has accurately described the Medicare qualification process for adults with ESRD, Ron Waskey's eventual entitlement to Medicare remains speculative and uncertain. There is no guarantee that he will be eligible for Medicare, Medicaid, or any other medical assistance program 10-15 years[2] hence when he is likely to need hemodialysis and/or kidney transplant services. There is no real likelihood that he will accumulate the work history required to qualify for Medicare on his own, nor is there any evidence that he will in the future be dependent on his parents. There is no reason to assume that his parents will still be alive when he enters renal failure. He is predictably likely to once again fall through a crack in the

---

2  And even less of a guarantee if, as the government will argue, Ron requires a kidney transplant and dialysis further in the future.

system, this time due to the timing of his probable future renal failure and his disability, coupled with the high unemployment rates and paucity of jobs in Crooked Creek and Stony River.[3]  The economies of the villages where Ron Waskey and his family have always lived are abysmal.[4]  How can Ron Waskey, with a diagnosis of borderline mental retardation, be expected to compete successfully for jobs under those circumstances?  And especially so when he is competing with healthy, able bodied adults who have children and families to support, in a community where the number of *unskilled* jobs is practically nil?  The answer is not difficult.  He cannot compete, and his prospects of future employment are indeed remote.

The proper measure of Ron Waskey's future medical expenses is their actual fair market value, not the value of some speculative benefit which he may never receive and which may not exist in the future.  If the United States is to benefit from Ron Waskey's potential future participation in the Medicare system, then the Government must bear the burden of proving that Ron Waskey will in fact receive future Medicare benefits, as well as the amount of such future benefits.  *Silverson v. United States*, 710 F.2d 557, 560 (9th Cir. 1983).  The future of Medicare itself is unknowable.  Ron Waskey's prospects for future employment, and with it his Medicare eligibility, are dim.  The future Medicare reimbursement formula is subject to change with no notice.  The United States has not

---

3  Exhibits 3 and 4

4  According to the data contained in Exhibits 3 and 4, taken from the State of Alaska, Department of Commerce and Economic Development (DCED) Community Database, Crooked Creek has 90 residents who are potentially members of the workforce, yet there are only 29 jobs in the village.  Likewise, Stony River has 49 potential employable residents, and there are only 13 jobs in the village.  The unemployment rate in those villages is, therefore, mathematically guaranteed to be in excess of 65%.

and cannot be meet its burden of proving to the requisite standard that Ron Waskey's future medical needs will covered by Medicare.

### 4. The United States' Policy Arguments Are Not persuasive

In the Ninth Circuit, the law is well established that Medicare benefits do not offset damages paid by under the Federal Torts Claims Act, because a plaintiff must contribute to the Medicare fund through Social Security payments in order to qualify for the Medicare benefit. *Silverson v. United States*, 710 F.2d 557, 560 (9th Cir. 1983). Most of the arguments made by the United States in section 4 of its Opposition were rejected by the Ninth Circuit in *Silverson*. There, in an FTCA medical malpractice case, the United States argued that (1) the Arizona collateral source statute required that the plaintiff's award be reduced by the amount that would be paid by Medicare[5], (2) Medicare payments are not a collateral source because both FTCA funds and Medicare payments come from the Government and (3) an award of the Medicare expenses constituted an illegal punitive award against the united States.

The first argument is largely irrelevant because the Arizona statute is different from AS 09.55.548. With respect to the second argument, the court noted that where a plaintiff has personally contributed to a government, it is a collateral source, because the Medicare fund is not supplied solely from the unfunded general funds of the United

---

5 *Silverson* is instructive because it is the only case discovered that wrestles with the issue of a setoff for *future* Medicare benefits.

States.  The Court also noted that before the United States could deduct any future Medicaid payments from the award to the plaintiff, it must first bear the burden of proof as to any Medicare benefits which the plaintiff may receive, or be entitled to receive, in the future.  Similarly, in this case the United States has not demonstrated that the plaintiff will be entitled to *any* Medicare benefits in the future, nor can it prove the amount that might be awarded.

Insofar as the United States argues that the award of Medicare expenses would constitute an illegal award of punitive damages, in contravention of the limitations imposed by the FTCA, the *Silverson* Court held that this rationale would essentially always find recovery from a collateral source to be "punitive" and ignores the collateral source doctrine's purpose of preventing a windfall to the defendant.  It also is contrary to AS 09.55.548(b)'s express exemption of federal programs that must by law seek subrogation from the malpractice collateral source bar.  On appellate review, the approach utilized by the *Silverson* court was the well established[6] Ninth Circuit methodology – to assess the award by the trial court to determine whether the amount of the award was such as to shock the conscience or demonstrated that the trial court was motivated by passion or prejudice.  Since any award of future medical benefits will be made by this Court, it is certainly premature to judge the award as punitive or excessive at this juncture

///

///

---

6  *United States v. Cline*  410 F.2d 1337, 1343 (9th Cir, 1969)

Reply to Opposition to Motion for Rule of Law on Applicable Measure of Damages
WASKEY v USA
Case No. 3:04-cv-0110-JWS                             9

///

**CONCLUSION**

The court should determine that future Medicaid benefits to Ron Waskey are speculative, and in any event are collateral benefits which may not be considered in awarding damages against the United States. Further, the Court should rule that Ron Waskey is legally entitled to recover from the tortfeasor the market value of medically necessary services, including the actual fair market cost of hemodialysis, organ transplant, and other related services and medications. The amount actually reimbursed by Medicare should be found to be irrelevant as a matter of law.

DATED at Anchorage, Alaska, this 1st day of December, 2006.

      **COOKE, ROOSA, & VALCARCE, LLC**
      Attorneys for Plaintiff Aggie Waskey


By: /s/Kenneth S. Roosa
   Cooke, Roosa, & Valcarce
   3700 Jewel Lake Road
   Anchorage, Alaska  99502
   Phone:  (907) 276-2744
   Fax:  (907) 276-2746
   Attorneys for Plaintiff
   Email:  Ken@Bushlawyers.com

Reply to Opposition to Motion for Rule of Law on Applicable Measure of Damages
WASKEY v USA
Case No. 3:04-cv-0110-JWS     10

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2006, a copy of the foregoing Reply to Opposition to Motion for Rule of Law on Applicable Measure of Damages was served electronically on:

Gary Guarino, Esq.
Assistant U.S. Attorney
222 W. 7th Ave., #9, Room 253
Anchorage, AK  99513

Donna McCready, Esq.
Ashburn & Mason, PC
1130 W. 6th Ave., Suite 100
Anchorage, AK  99501


/s/ Kenneth Roosa